## McDonnell Motor Hauling Company *v.* Morgan Construction Company.

### Opinion delivered December 24, 1921.

1. SALES—BREACH OF WARRANTY—RESCISSION.—Where plaintiff sold certain machinery to defendant, reserving title until the purchase money should be paid, there was an implied warranty of absolute title in plaintiff; and where plaintiff at the time had only a conditional title depending on the purchase money due to plaintiff's original vendor being paid, there was a breach of warranty, upon discovering which defendant had a right to treat the contract as at an end and to recover damages resulting from such breach.

2. SALES—WHEN CONTRACT EXECUTED.—Where plaintiff sold machinery to defendant, reserving title until the purchase money should be paid, and delivered possession of the machinery, the transaction constituted an executed contract of sale, and not an executory contract for its sale at a future date.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*John D. Shackleford,* for appellant.

In the sale of chattels warranty of title is implied. 79 Ark. 435; 24 *Id.* 223; 19 *Id.* 447; 24 *Id.* 222. If title fails, buyer may rescind the contract and demand return of money paid. 35 Ark. 483; 78 *Id.* 444; 22 *Id.* 522; 68 *Id.* 299.

The machine was never of any benefit to appellant, but, on account of the fraud perpetrated upon him by

appellee, he was out a large sum of money. If appellee is permitted to keep this money, it amounts to allowing it to profit by its own fraud. 22 Ark. 521; 35 *Id.* 485; 24 *Id.* 222; 42 *Id.* 97; 48 *Id.*138; 49 *Id.* 320; 53 *Id.* 222.

*G. E. Garner,* for appellee.

The vendor here was in position to perform, and did perform by actual delivery of chattel. Such being the case, and the purchaser refusing to complete the transaction, the latter cannot recover purchase money paid. 27 R. C. L. § 378, and cases cited. If appellant desired to rescind, he should have notified appellee, and placed it *in statu quo.* 27 R. C. L. § 379.

Humphreys, J. Appellant instituted suit against appellees in the Pulaski Circuit Court to recover $1,000 paid upon the purchase price and $397.31 paid for freight and unloading upon a steam shovel purchased by appellant from appellees for failure of title. Appellees filed an answer denying the sale and breach thereof by failure of title, but alleged that the contract entered into between appellant and appellees was to sell the shovel in question for $13,000 in partial payments when the entire purchase money had been paid; that appellant had breached the contract by failure to pay the purchase price, to appellees' damage in the sum of $2000, occasioned by the loss of the use of the steam shovel and the expense in caring for it. The case was submitted to the court sitting as a jury upon the pleadings and evidence, which resulted in a finding of fact, declaration of law, and judgment against appellant in favor of appellees, from which an appeal has been duly prosecuted to this court.

The memorandum of the transaction signed by the parties assumed the form of a proposition and acceptance, which is as follows:

"June 28, 1920.

"McDonnell Motor Hauling Company, St. Louis, Mo.

"Gentlemen: Confirming conversation of even date, we agree to sell you Osgood Machine No. 853, steam

shovel and drag line equipment, including Page Bucket, for the sum of thirteen thousand dollars, $1,000 cash, balance in ten payments of $1,200 each, due monthly beginning August 1, 1920. If you desire to make other payments before due we agree to accept same. In case you should fail to go through with entire agreement, the payments having been made to be applied as rent.

(Signed)    "Morgan Construction Company,
"By F. J. Dove."

"Morgan Construction Company, Little Rock, Ark.

"Gentlemen: We hereby accept the above proposition and hand you our check for one thousand dollars.

(Signed) "McDonnell Motor Hauling Company,
"By M. P. McDonnell."

Appellant testified that appellees represented that they had a good title to the shovel; that appellees agreed to prepare ten notes for $1200 each, maturing monthly beginning August 1, 1920; that he called several times to execute the notes, but they were never prepared by appellee; that the shovel was shipped to him at Carthage, Arkansas; that he paid $140.81 for freight thereon and $246.50 for unloading and watching same; that the shovel was out of repair, and while in St. Louis in search of repairs he ascertained from the Central Supply Company, who were agents for the company that manufactured the shovel, that the manufacturing company had sold the shovel to appellees upon a cash and credit payments and had retained the title in the shovel until the full purchase price thereof was paid, and that appellees had only paid one-fourth of the purchase price at the time they sold the shovel to appellant; that he obtained this information on July 24, 1920; that he never used the shovel at all and had nothing to do with it after July 28; that the Central Supply Company of St. Louis said it was going to take up the shovel on August 2; that a number of letters were received by him between July 14 and July 28, 1920, containing acceptances for him to sign covering the August and September pay-

ments, to which he paid no heed, and a telegram of date August 2, 1920, in words as follows: "Your remittance one thousand not here; advise quick by wire if you have remitted, otherwise will declare agreement canceled and take up engine. (Signed); Morgan Construction Company," to which he did not respond.

The other testimony in the case was to the effect that the Osgood Manufacturing Company sold the shovel to appellees for $12,500, part cash and part on time, and retained title until all the purchase money was paid; that it paid one-fourth of the purchase money in cash, and, after paying three deferred payments, defaulted, and that suit was instituted against appellees in replevin by the Osgood Manufacturing Company for the property; that, after a judgment was obtained for the possession of the shovel in the circuit court, the Osgood Manufacturing Company resold the shovel to appellees.

Appellant contends that the contract between the parties was one of sale and purchase breached by appellees *ab initio* on account of express or implied warranty of title. Appellees' contention is that the oral evidence was inadmissible as contradicting the written contract, in the form of a written proposition and acceptance, which was merely a contract to sell the steam shovel and furnish a good title when all the purchase money should be paid by appellant. We deem it unnecessary to pass upon the competency or relevancy of the evidence, because our construction of the written contract is that it constituted a conditional sale of the steam shovel by appellees to appellant. The proposal was to sell and the acceptance to buy the steam shovel of that date for a total consideration of $13,000, $1000 cash and the balance in monthly payments of $1200 each. The title, of course, passed, but conditionally, the condition being that, unless all the payments were made, appellees might retake the machine and treat the payments made as rent for its use during the interim. The contract being a conditional sale of the shovel, warranty of title was

implied, and appellant, the vendee, had a right to treat the contract at an end by refusing to make further payments and to recover damages resulting from appellee's breach. *Strayhorn* v. *Giles,* 22 Ark. 517; *Merritt* v. *Robinson,* 35 Ark. 483.

Appellant's refusal to pay the acceptances, therefore, did not constitute a breach of the contract on his part. Appellees were the first to breach it by failure to furnish a good title. Appellees had no title to sell at the time they sold and delivered the shovel to appellant, the same having been retained in the Osgood Manufacturing Company. The court erred in treating the contract as executory for the sale of the shovel at a future date. It was an executed contract. It was complete and passed a defeasible title to the shovel on delivery thereof under the contract.

For the error indicated, the judgment is reversed and the cause remanded for new trial.